# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

AMER AWAD, individually and on
behalf of all others similarly situated,

        *Plaintiff*,

    v.

COAST DENTAL SERVICES, LLC,

        *Defendant*.

Case No. 8:22-cv-01478-MSS-CPT

CLASS ACTION

JURY TRIAL REQUESTED


## DEFENDANT COAST DENTAL SERVICES, LLC'S
## MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION..................................................................................................1

APPLICABLE LEGAL STANDARDS .................................................................4

I.    FED. R. CIV. P. 12(B)(6) – FAILURE TO STATE A CLAIM FOR
      RELIEF ......................................................................................................4

II.   FED. R. CIV. P. 12(F) AND 23 – STRIKING IMPROPER CLASS
      ALLEGATIONS ........................................................................................5

ARGUMENT .........................................................................................................6

I.    THE COMPLAINT SHOULD BE DISMISSED UNDER RULE
      12(B)(6) FOR FAILURE TO PLEAD A CLAIM FOR RELIEF
      UNDER THE TCPA'S INTERNAL DNC PROVISIONS..........................6

      A.    Plaintiff Does Not Allege Receipt of a "Telephone Solicitation."...........7

      B.    Plaintiff Failed to Plead Facts Demonstrating a Failure by CDS to
            Implement the Requisite Minimum Internal DNC Procedures ...........10

      C.    Plaintiff Failed to Plead Facts Demonstrating That He is a
            "Residential Telephone Subscriber" Within the Meaning of the
            TCPA ................................................................................................13

      D.    Plaintiff Failed to Plead Direct or Vicarious TCPA Liability...............14

      E.    Plaintiff Has Not Alleged a "Willful" or "Knowing" Violation............17

II.   ALTERNATIVELY, PLAINTIFF'S FAULTY PROPOSED CLASS
      DEFINITION SHOULD BE STRICKEN PURSUANT TO RULE
      12(F) AND RULE 23 ................................................................................17

      A.    Plaintiff's Class Definition is Impermissibly Overbroad ......................18

      B.    Common Questions of Law and Fact Do Not Predominate ................22

      C.    Plaintiff's Remaining "Class" Allegations Are Superfluous.................24

III.  CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

Page

## CASES

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,
 2018 WL 488257 (N.D. Ill. Jan. 18, 2018)....................................................6, 21

*Aaronson v. CHW Grp., Inc.*,
 2019 WL 8953349 (E.D. Va. Apr. 15, 2019).....................................................16

*Abramson v. 1 Glob. Capital, LLC*,
 2015 WL 12564318 (S.D. Fla. Sept. 23, 2015)............................................15, 17

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ....................................................................................4, 12

*Bacon v. Stiefel Lab'ys, Inc.*,
 275 F.R.D. 681 (S.D. Fla. 2011) .......................................................................22

*Bailey v. CVS Pharmacy, Inc.*,
 2018 WL 3866701 (D.N.J. Aug. 14, 2018) ........................................................8

*Bailey v. Domino's Pizza, LLC*,
 867 F. Supp. 2d 835 (E.D. La. 2012) ................................................................12

*Baisden v. Credit Adjusts., Inc.*,
 813 F.3d 338 (6th Cir. 2016) ...........................................................................23

*Balthazor v. Cent. Credit Servs., Inc.*,
 2012 WL 6725872 (S.D. Fla. Dec. 27, 2012) ...................................................22

*Bank v. Vivint Solar, Inc.*,
 2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019
 WL 1306064 (Mar. 22, 2019).........................................................................16

*Barnett v. Bank of Am., N.A.*,
 2021 WL 2187950 (W.D.N.C. May 28, 2021)...................................................23

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..........................................................................................4

*Benzion v. Vivint, Inc.*,
 2014 WL 11531368 (S.D. Fla. Jan. 17, 2014) ...........................................passim

*Boydston v. Asset Acceptance LLC*,
 496 F. Supp. 2d 1101 (N.D. Cal. 2007) ............................................................11

*Braver v. NorthStar Alarm Servs., LLC*,
 2019 WL 3208651 (W.D. Okla. July 16, 2019), *amended on other grounds by*,
 2019 WL 5722207 (Nov. 5, 2019) ...................................................................11

*Burdge v. Ass'n Health Care Mgmt., Inc.*,
 2011 WL 379159 (S.D. Ohio Feb. 2, 2011) ......................................................11

# TABLE OF AUTHORITIES
### (Continued)

Page

*Canary v. Youngevity Int'l, Inc.*,
  2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ...................................................17

*Cataldi v. Ocwen Loan Servicing, LLC*,
  2017 WL 5903440 (E.D. Mich. Nov. 30, 2017) ................................................13

*Charvat v. DFS Servs. LLC*,
  781 F. Supp. 2d 588 (S.D. Ohio 2011) ..............................................................11

*Charvat v. GVN Mich., Inc.*,
  561 F.3d 623 (6th Cir. 2009) ..............................................................10, 11, 19

*Charvat v. NMP, LLC*,
  656 F.3d 440 (6th Cir. 2011) .............................................................................11

*Cholly v. Uptain Grp., Inc.*,
  2017 WL 449176 (N.D. Ill. Feb. 1, 2017) .........................................................23

*Colley v. Procter & Gamble Co.*,
  2016 WL 5791658 (S.D. Ohio Oct. 4, 2016).....................................................21

*Colomar v. Mercy Hosp., Inc.*,
  242 F.R.D. 671 (S.D. Fla. 2007) .......................................................................19

*Conigliaro v. Norwegian Cruise Line*,
  2006 WL 7346844 (S.D. Fla. Sept. 1, 2006) .....................................................18

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019).................................................................... 18, 19

*Cunningham v. Politi*,
  2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*, 2019
  WL 2524737 (June 19, 2019) ............................................................................14

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
  251 F. Supp. 3d 1187 (M.D. Tenn. 2017) .........................................................14

*Cunningham v. Sunshine Consulting Grp., LLC*,
  2018 WL 3496538 (M.D. Tenn. July 20, 2018), *report and rec. adopted*, 2018
  WL 5728534 (Aug. 7, 2018) ..............................................................................13

*Davila v. Delta Air Lines, Inc.*,
  326 F.3d 1183 (11th Cir. 2003)............................................................................5

*Dolemba v. Kelly Servs., Inc.*,
  2017 WL 429572 (N.D. Ill. Jan. 31, 2017).......................................................13

*Donaca v. Dish Network, LLC*,
  303 F.R.D. 390 (D. Colo. 2014) ........................................................................15

## TABLE OF AUTHORITIES
(Continued)

Page

*Dorfman v. Albertson's LLC*,
2020 WL 86192 (D. Idaho Jan. 7, 2020) ........................................................... 23

*Earnest v. Gen. Motors Corp.*,
923 F. Supp. 1469 (N.D. Ala. 1996) .................................................................. 21

*Eldridge v. Cabela's Inc.*,
2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) ................................................... 23

*Flores v. City of Cal. City*,
2019 WL 1934016 (E.D. Cal. May 1, 2019) ....................................................... 24

*Foxx v. Ocwen Loan Servicing, LLC*,
2012 WL 2048252 (M.D. Fla. June 6, 2012) ........................................................ 5

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ................................................... 15

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ...................................................................................... 5, 18

*Gene and Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ............................................................................ 24

*GeorgiaCarry.Org., Inc. v. Georgia*,
687 F.3d 1244 (11th Cir. 2012) .......................................................................... 4

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................... 22

*Henley v. Turner Broad. Sys., Inc.*,
267 F. Supp. 3d 1341 (N.D. Ga. 2017) .............................................................. 17

*Hicks v. Alarm.com*,
2020 WL 9261758 (E.D. Va. Aug. 6, 2020) ....................................................... 14

*Hirsch v. Lyndon S. Ins. Co.*,
2019 WL 5110622 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.*,
2019 WL 8370863 (Aug. 6, 2019), aff'd, 805 F.App'x 987 (11th Cir. 2020).. 15, 17

*Holding Co. of the Vills., Inc. v. Little John's Movers & Storage, Inc.*,
2017 WL 6319549 (M.D. Fla. Dec. 11, 2017) .................................................... 12

*Jaafar Inv. Corp. v. Scottsdale Ins. Co.*,
2019 WL 8014368 (S.D. Fla. June 7, 2019) ......................................................... 5

*Jackson v. Motel 6 Multipurpose, Inc.*,
130 F.3d 999 (11th Cir. 1997) ............................................................................. 5

## TABLE OF AUTHORITIES
### (Continued)

Page

*Jackson v. Safeway, Inc.*,
  2016 WL 5907917 (N.D. Cal. Oct. 11, 2016) ........................................9

*Laccinole v. Appriss, Inc.*,
  453 F. Supp. 3d 499 (D.R.I. 2020) ............................................... 6, 11

*Latner v. Mount Sinai Health Sys., Inc.*,
  2016 WL 10571897 (S.D.N.Y. Dec. 14, 2016)....................................8

*Lawson v. Life of the S. Ins. Co.*,
  286 F.R.D. 689 (M.D. Ga. 2012) ............................................... 5, 18

*Licari Family Chiropractic Inc. v. eClinical Works, LLC*,
  2019 WL 7423551 (M.D. Fla. Sept. 16, 2019) ..................................21

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
  2013 WL 275568 (E.D. Mo. Jan. 24, 2013)................................... 6, 24

*Meeks v. Buffalo Wild Wings, Inc.*,
  2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) ..................................16

*Messner v. Northshore Univ. Health System*,
  669 F.3d 802 (7th Cir. 2012) ..................................................24

*Morgan v. U.S. Xpress, Inc.*,
  2018 WL 3580775 (W.D. Va. July 25, 2018)....................................14

*MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  755 F. Supp. 2d 1205 (M.D. Fla. 2010) ..................................... 5, 18

*Murphy v. DCI Biologicals Orlando, LLC*,
  2013 WL 6865772 (M.D. Fla. Dec. 31, 2013)........................... 7, 9, 20

*Naiman v. Freedom Forever, LLC*,
  2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ..................................15

*New Concept Dental v. Dental Res. Sys., Inc.*,
  2020 WL 3303064 (S.D. Fla. Mar. 3, 2020)....................................22

*Newhart v. Quicken Loans Inc.*,
  2016 WL 7118998 (S.D. Fla. Oct. 12, 2016)....................................22

*Nicholas Greene v. Select Funding, LLC*,
  2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ..................................19

*Norman v. N. Illinois Gas Co.*,
  2014 WL 184774 (N.D. Ill. Jan. 16, 2014)................................... 7, 9

*O'Neill v. The Home Depot U.S.A., Inc.*,
  243 F.R.D. 469 (S.D. Fla. 2006) ..............................................19

# TABLE OF AUTHORITIES
### (Continued)

Page

*Pascal v. Agentra, LLC*,
  2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ...................................................15

*Pepka v. Kohl's Dep't Stores, Inc.*,
  2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) .....................................................5

*Perez v. Metabolife Int'l, Inc.*,
  218 F.R.D. 262 (S.D. Fla. 2003) .......................................................................21

*Revitch v. Citibank*,
  2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) ...................................................22

*Sandoe v. Bos. Sci. Corp.*,
  2020 WL 94064 (D. Mass. Jan. 8, 2020) .............................................................8

*Saulsberry v. Meridian Financial Servs., Inc.*,
  2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) ...................................................22

*Sauter v. CVS Pharmacy, Inc.*,
  2014 WL 1814076 (S.D. Ohio May 7, 2014) .......................................................5

*Simmons v. Charter Commc'ns, Inc.*,
  222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017)........12

*Smith v. Am.-Amicable Life Ins. Co. of Texas*,
  2022 WL 1003762 (E.D. Pa. Apr. 4, 2022)........................................................14

*Smith v. Vision Solar LLC*,
  2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ..............................................14, 16

*Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*,
  623 F.3d 1371 (11th Cir. 2010)............................................................................4

*Stan Smith v. Network Sols., Inc. and Verisign, Inc.*,
  135 F. Supp. 2d 1159 (N.D. Ala. 2001) ............................................................18

*Sterling v. Securus Techs., Inc.*,
  2020 WL 2198095 (D. Conn. May 6, 2020)......................................................17

*Strange v. GMR Processing LLC*,
  2022 WL 898363 (N.D. Ga. Mar. 28, 2022) .....................................................17

*Tillman v. Ally Fin. Inc.*,
  2017 WL 7194275 (M.D. Fla. Sept. 29, 2017) ..................................................22

*Trenz v. On-Line Admins., Inc.*,
  2020 WL 5823565 (C.D. Cal. Aug. 10, 2020)...................................................22

# TABLE OF AUTHORITIES
## (Continued)

Page

*Vandenbrink v. State Farm Mut. Auto. Ins. Co.*,
2012 WL 3156596 (M.D. Fla. Aug. 3, 2012) ..................................................... 18

*Visser v. Caribbean Cruise Line, Inc.*,
2020 WL 415845 (W.D. Mich. Jan. 27, 2020) ................................................... 22

*Walewski v. Zenimax Media, Inc.*,
502 F.App'x 857 (11th Cir. 2012) (*per curiam*) .................................................. 19

*Wilson v. PL Phase One Operations L.P.*,
422 F. Supp. 3d 971 (D. Md. 2019) ........................................................... 11, 14

*Wolf v. Alutiiq Educ. & Training, LLC*,
2020 WL 232795 (M.D. Ala. Jan. 14, 2020) ...................................................... 4

*Wolfkiel v. Intersections Ins. Servs. Inc.*,
303 F.R.D. 287 (N.D. Ill. 2014) ...................................................................... 24

*Zani v. Rite Aid Hdqtrs. Corp.*,
725 F.App'x 41 (2d Cir. 2018) ......................................................................... 8

## STATUTES

47 U.S.C. § 227 *et seq.* ..................................................................... passim

## OTHER AUTHORITIES

45 C.F.R. § 160.103 ......................................................................................... 8

45 C.F.R. § 164.501 *et seq.* ............................................................................ 8

47 C.F.R. § 64.1200(c)(2) ............................................................................... 20

47 C.F.R. § 64.1200(d) ........................................................................... passim

47 C.F.R. § 64.1200(f)(13) ............................................................................... 9

47 C.F.R. § 64.1200(f)(15) ............................................................................... 7

*In re Rules & Regs. Implementing the TCPA*,
27 F.C.C. Rcd. 1830 (Feb. 15, 2012) ............................................................... 7

*In re Rules & Regs. Implementing the TCPA*,
30 F.C.C. Rcd. 7961 (July 10, 2015) ................................................................ 7

## INTRODUCTION

Plaintiff's one-count putative class action Complaint (*see* Dkt. 1) does little more than allege, in a conclusory fashion and without requisite factual support, that Coast Dental Services ("CDS") violated the Telephone Consumer Protection Act ("TCPA"). Plaintiff's claim rests entirely on text messages purportedly sent to his cellphone—texts to which he apparently *consented* to receiving but then allegedly revoked his consent— that he asserts violated the TCPA's internal "Do Not Call" ("DNC") procedural requirements. However, not only does his Complaint lack sufficient supporting facts, which alone warrants its dismissal under federal pleadings standards, but it also suffers from an even more fundamental fatal flaw. That is because the at-issue texts, on their face, were <u>not</u> "telephone solicitations" as defined by the TCPA, as is required to plead any DNC claim, and instead were *informational* messages related to his healthcare and dental treatment at CDS. Both the Federal Communications Commission ("FCC") and federal regulations related to the Health Insurance Portability and Accountability Act ("HIPAA") expressly *exclude* communications related to an individual's health or treatment from their respective definitions of marketing, placing such communications like those Plaintiff allegedly received here squarely outside of the TCPA's purview.

Equally problematic for Plaintiff is that his claim is essentially that CDS violated the TCPA's implementing regulations—*i.e.,* 47 C.F.R. § 64.1200(d)(1)—by failing to have a written policy for maintaining an internal DNC list because he purportedly made a "STOP" (*i.e.*, opt-out) request but then received additional texts thereafter. However,

courts that have recognized a cause of action under the internal DNC regulations have held that those regulations are not violated simply because a plaintiff subsequently receives a call or text after making an internal DNC request, but rather only if the defendant failed to implement the proscribed minimum internal procedures at the time of (*i.e., **prior to** the plaintiff receiving) the at-issue call or text. Yet, Plaintiff's allegations regarding CDS' supposed failure to implement such procedures in this case, like the rest in his threadbare Complaint, are entirely conclusory. Moreover, not only does Plaintiff fail to allege with any factual support that he is a "residential telephone subscriber" within the meaning of the TCPA, which is also necessary to state any claim under the TCPA's DNC provisions and avoid dismissal, but also Plaintiff's own pled allegations actually belie such a claim, as he apparently improperly attempted to opt-out of receiving future text messages by failing to respond with the correct opt-out message.[1] Plaintiff's entire TCPA claim against CDS therefore rests entirely on a faulty premise.

All told, merely regurgitating the legal elements of a claim without requisite supporting facts (as Plaintiff has done here) does not satisfy federal pleading standards and cannot avoid dismissal. Consequently, Plaintiff's Complaint should be dismissed in its entirety under Fed. R. Civ. P. 12(b)(6) for at least the following reasons:

**First**, the Complaint should be dismissed because Plaintiff fails to state a plausible claim under the TCPA or to plead sufficient facts to support such a claim. In this regard,

---

[1] As discussed below, Plaintiff was informed that he needed to reply with "STOPALL" if he "would like to stop receiving all communications" from or on behalf of CDS' Brandon Town Center office, rather than with just "STOP" which would only stop a certain kind of communication. Dkt. 1, ¶¶ 10-16.

Plaintiff fails to plead specific non-conclusory facts supporting the essential elements of his purported DNC claim—specifically, that (1) he received more than one "telephone solicitation" call in 12-month period that was physically "initiated" "by or on behalf of the same entity"; (2) he is a "residential telephone subscriber" within the meaning of the TCPA; (3) CDS failed to implement internal DNC procedures before he was subsequently contacted; or (4) he properly revoked his consent to receive future text messages. Federal courts have routinely dismissed threadbare TCPA DNC claims like Plaintiff's on these bases, any one of which warrants dismissal of his Complaint here in its entirety under Rule 12(b)(6). This Court should rule similarly in the present case.

**Second**, to successfully plead *any* TCPA claim and avoid dismissal under Rule 12(b)(6), *all* plaintiffs must allege sufficient facts demonstrating the defendant's direct or vicarious liability for the calls at issue. Here, Plaintiff fails to plead sufficient facts demonstrating that CDS: (1) itself, and not some third party, "physically" sent him the at-issue texts, as required for direct TCPA liability; or (2) had an agency relationship with (*i.e.*, sufficient "control" over) any third party who did, as required for vicarious TCPA liability. These defects alone likewise warrant dismissal of the entire Complaint.

**Third**, even if Plaintiff had sufficiently pled facts supporting his DNC claim, and he plainly did not, he does not provide facts suggesting any "willful" or "knowing" violation (justifying his request for treble damages under the TCPA) occurred here. Those faulty allegations should, thus, be dismissed at the minimum under Rule 12(b)(6).

**Finally**, while the entire Complaint is ripe for dismissal on the myriad grounds

above, the class allegations within it are so facially improper and inadequate that the classes are uncertifiable as pled. Consequently, those faulty allegations should be stricken at the pleadings stage, if they survive dismissal, under Fed. R. Civ. P. 12(f) and 23 before the parties and Court needlessly waste effort in discovery on them.

## APPLICABLE LEGAL STANDARDS

### I.   Fed. R. Civ. P. 12(b)(6) – Failure To State A Claim for Relief

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently plead a claim for relief. Of course, it is well-settled that any claim brought in federal court requires the pleading of sufficient actual facts, meaning that a "bare assertion" and "conclusory allegation[s]" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the pled factual allegations must be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). "In other words, to survive a motion pursuant to Rule 12(b)(6), 'a plaintiff [must] include factual allegations for ***each essential element*** of his or her claim.'" *Wolf v. Alutiiq Educ. & Training, LLC*, 2020 WL 232795, at *2 (M.D. Ala. Jan. 14, 2020) (quoting *GeorgiaCarry.Org., Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (abrogated on other grounds by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)) (emphasis added, alteration in original).

Moreover, while this Court must generally accept Plaintiff's factual allegations as true under Rule 12(b)(6), "conclusory allegations, unwarranted factual deductions or

legal conclusions masquerading as facts will not prevent dismissal" and are not to be taken as true. *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Jaafar Inv. Corp. v. Scottsdale Ins. Co.*, 2019 WL 8014368, at *1 (S.D. Fla. June 7, 2019) ("Defendant is correct that Plaintiff supports his allegations with insufficient ***specific facts*** about the nature and extent of [his] alleged loss.") (emphasis added)).

## II.   <u>Fed. R. Civ. P. 12(f) and 23 – Striking Improper Class Allegations</u>

It is well settled that "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action. *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982); *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012). In this regard, courts in the Eleventh Circuit have recognized that they may (and, indeed, ***should*** in appropriate cases) strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not certifiable under Rule 23 as pleaded. *See, e.g., Lawson*, 286 F.R.D. at 700-01; *Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252, at *9-10 (M.D. Fla. June 6, 2012); *see also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (recognizing that propriety of class certification may be "readily apparent" from the face of the complaint); *MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010) (ruling similarly).

Courts routinely find proposed classes to be uncertifiable and strike them at the pleadings stage, in TCPA cases and others, where: (a) the class definition is overbroad; or (b) common questions of law and fact do not predominate. *See, e.g., Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014); *Pepka v. Kohl's Dep't*

*Stores, Inc.*, 2016 WL 8919460, at *1-5 (C.D. Cal. Dec. 21, 2016); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.,* 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4-5 (E.D. Mo. Jan. 24, 2013). Plaintiff's proposed class (*see* Dkt. 1, ¶ 32) fits neatly into these categories.

## ARGUMENT

### I.   The Complaint Should Be Dismissed Under Rule 12(b)(6) For Failure To Plead a Claim for Relief under the TCPA's Internal DNC Provisions.

Plaintiff attempts to bring a single cause of action under the TCPA's internal DNC provisions, which in pertinent part: (i) prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber" and (ii) require that any "person or entity making a call for telemarketing purposes" to "honor a residential subscriber's [DNC] request" made to them within a "reasonable time" and have internal policies and procedures in place meeting certain minimum standards. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d). Thus, to state such a claim and avoid dismissal under Rule 12(b)(6) here, Plaintiff "must plead, *at minimum*, that (1) [he] is a residential telephone subscriber who (2) received [more than one] call made for purposes of telemarketing or solicitation purposes (3) from a person or entity that has not implemented the requisite procedures." *Laccinole v. Appriss, Inc.,* 453 F. Supp. 3d 499, 505 (D.R.I. 2020) (emphasis added). As demonstrated below, however, Plaintiff's Complaint fails to plead actual *facts* supporting these essential elements, thus warranting its dismissal on multiple grounds.

### A.   Plaintiff Does Not Allege Receipt of a "Telephone Solicitation."

As an initial matter, Plaintiff's Complaint is subject to dismissal as he did <u>not</u> receive any texts fitting the definition of "telephone solicitations" under the TCPA. *See, e.g., Murphy v. DCI Biologicals Orlando, LLC,* 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013) (dismissing: "Because neither of the messages in this case encouraged [plaintiff] to purchase, rent, or invest in anything, they do not constitute 'telephone solicitations' under the TCPA."); *Norman v. N. Illinois Gas Co.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing DNC claim where plaintiff failed to allege facts supporting an inference that the at-issue calls were made for solicitation purposes).

The TCPA defines a "telephone solicitation" as "a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15). However, the FCC has recognized certain types of communications do not fit this definition. For example, phone calls whose "intent and purpose concern consumers' health, not the purchase of a good or service," and whose content is subject to HIPAA, are ***not*** "telephone solicitations" under the TCPA. *In re Rules & Regs. Implementing the TCPA*, 27 F.C.C. Rcd. 1830, 1855, ¶ 63 n. 195 (Feb. 15, 2012). Along these lines, the FCC has provided several poignant examples of calls that it regards as predominately healthcare-related, including: "appointment and exam confirmations and reminders, wellness checkups, ... prescription notifications, and home healthcare instructions." *In re Rules & Regs. Implementing the TCPA*, 30 F.C.C. Rcd. 7961, 8031 ¶ 146 (July 10, 2015) (enumerating what type of calls qualify for FCC's regulatory healthcare treatment purpose exemption). This is confirmed by HIPAA

regulations defining what is, and is not, "marketing," for the purposes of healthcare-related communications. Indeed, "marketing" under HIPPA's definition likewise does <u>not</u> include communications made "[f]or treatment of an individual by a health care provider, including case management or care coordination for the individual, or to direct or recommend alternative treatments, therapies, health care providers, or settings of care to the individual." 45 C.F.R. § 164.501(2)(ii)(B).[2]

Applying these well-settled principles, numerous courts have held that health-related reminder calls—even if there is no preexisting "booked appointment" as Plaintiff alleges (Dkt. 1, ¶ 20)—do not fall within the ambit of the TCPA's telemarketing restrictions. *See, e.g., Sandoe v. Bos. Sci. Corp.,* 2020 WL 94064, at *5 (D. Mass. Jan. 8, 2020) (granting summary judgment, holding calls offering information about a health care seminar "were healthcare messages and not telephone solicitations" and thus did not fall under the DNC provisions); *Latner v. Mount Sinai Health Sys., Inc.*, 2016 WL 10571897, at *3 (S.D.N.Y. Dec. 14, 2016) (granting motion for judgment on the pleadings under Rule 12(c), holding a "flu vaccine reminder was intended to 'direct or recommend alternative treatment' and therefore [was] exempt from HIPPA's definition of 'telemarketing'") (quoting 45 C.F.R. § 164.501)); *Bailey v. CVS Pharmacy, Inc.*, 2018 WL 3866701, at *6 (D.N.J. Aug. 14, 2018) (granting Rule 12(b)(6) motion, noting that "a flu shot is health related" and finding at-issue text messages were not telemarketing); *Zani v. Rite Aid Hdqtrs. Corp.*, 725 F.App'x 41, 43 (2d Cir. 2018) (affirming district court's

---

[2] Dentists are "covered entities" subject to HIPAA. *See* 45 C.F.R. § 164.502(a); 45 C.F.R. § 160.103.

grant of summary judgment, finding that text message stating "'[i]ts [*sic*] flu season again. Your PCP at WPMG is thinking of you! Please call us ... to schedule an appointment for a flu shot' was healthcare related and therefore not subject to the TCPA's telemarketing requirements"); *Jackson v. Safeway, Inc.*, 2016 WL 5907917, at *5-6 (N.D. Cal. Oct. 11, 2016) (granting summary judgment and finding that flu shots reminder calls were not solicitations and were not materially different than prescription refill or pick-up calls).[3] This Court should rule similarly and dismiss on this basis.

Here, the text messages at issue are just like reminders for flu shots or "wellness checkups," which do <u>not</u> qualify as a "telephone solicitation." In fact, beyond wishing Plaintiff a "Happy Birthday" (which indisputably is not a "solicitation"), the purported messages merely stated that he was overdue for his regular dental cleanings. *See* Dkt. 1, ¶¶ 13, 16. This fits precisely within what is <u>not</u> marketing under both FCC guidance and HIPAA, discussed above. In other words, the at-issue messages related to Plaintiff's health and dental treatment as provided by CDS, noted the length of time that he was overdue for his scheduled cleaning, and provided an easy booking mechanism for his appointment. Consequently, because Plaintiff did not receive any "telephone solicitation," he failed to plead an essential element of his lone asserted TCPA claim, which warrants dismissal of his Complaint in its entirety. *See Murphy* and *Norman*, *supra*.

---

[3] Plaintiff may argue in response to this Motion that some of these cases are distinguishable because they involved whether the calls or texts at issue constituted "telemarketing" for purposes of a claim under Section 227(b) of the TCPA, which Plaintiff does not allege here. However, the definition of "telemarketing" for a Section 227(b) claim is substantially similar to the definition of a "telephone solicitation" required for Plaintiff's purported DNC claim under Section 227(c)—*i.e.,* "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13).

**B.    Plaintiff Failed to Plead Facts Demonstrating a Failure by CDS to Implement the Requisite Minimum Internal DNC Procedures.**

Beyond lacking facts demonstrating a "telephone solicitation," which alone requires its dismissal, Plaintiff's Complaint also lacks facts supporting the various other essential elements of his internal DNC violation claim. For example, (1) Plaintiff does not sufficiently allege that CDS failed to implement the minimum requisite procedures as required by 47 C.F.R. § 64.1200(d)(1) *prior to* his receipt of any subsequent text messages; and (2) Plaintiff's claim rests on the faulty premise that he opted-out of receiving text messages, and thus CDS did not have a DNC policy—yet, Plaintiff's own allegations show that he *did not properly opt-out*. All this supports dismissal, as well.

As a threshold matter, courts recognizing such a cause of action have held that Section 64.1200(d) of the TCPA's implementing regulations addresses only the need for a caller to have minimum internal procedures in place prior to initiating a call.  That is, "[t]he 'violation of the regulations' is … the initiation of the phone call without having implemented the minimum procedures." *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 632 (6th Cir. 2009); *see also Benzion v. Vivint, Inc.*, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014) ("A plain reading of § 64.1200(d) reveals that any cause of action under it must include allegations that the consumer received a phone call from the telemarketer when the telemarketer did not have proper procedures in place to make such a phone call."). In other words, in jurisdictions where such a cause of action has been recognized, non-compliance with one of the procedures outlined in § 64.1200(d) does *not* result in a violation—*i.e.*, the TCPA's internal DNC "regulations do not specifically proscribe

actually calling an individual after the individual has requested placement on a do-not-call list … , nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011). This further supports dismissal of Plaintiff's Complaint.[4]

As applied in this case, Plaintiff merely concludes that, "[u]pon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf." Dkt. 1, ¶ 49. Plaintiff does not, however, support these conclusory allegations with any *factual* bases as to what CDS' internal procedures actually are, how they are somehow deficient (and they are not), or that they were not implemented before he received any text messages. Such bald allegations are plainly insufficient. *See, e.g., Laccinole*, 453 F. Supp. 3d at 505–06 (dismissing, in part, where allegations regarding defendants "supposed failure to implement the requisite procedures [we]re not well-pleaded and must be discarded"); *Benzion*, 2014 WL 11531368, at *5 (merely alleging "that Defendant called Plaintiff back after being asked not to ever call again" insufficient because it "does not allege that Defendant made either call while not having the proper procedures in

---

[4] There is a split amongst the circuits as to whether an internal DNC rule violation *even provides a private cause of action* in the first place, as various courts have recognized that the implementing regulations in 47 C.F.R. § 64.1200(d) were promulgated under the technical and procedural standards in Section *227(d)* of the TCPA (*i.e.,* not under Section 227(c)), which *does not give rise to a private cause of action*. *E.g., Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007); *Burdge v. Ass'n Health Care Mgmt., Inc.*, 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011); *Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 982 (D. Md. 2019); *Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at *15 (W.D. Okla. July 16, 2019), *amended on other grounds by*, 2019 WL 5722207 (Nov. 5, 2019). Indeed, many of the courts that have held that Section 64.1200(d) affords a private right of action relied on the faulty ruling in *Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011)—which merely "*states*" that 64.1200(d) was promulgated under Section 227(c) of the TCPA rather than Section 227(d) "*without analysis*." *Braver*, 2019 WL 3208651, at *15 (emphasis added). This Court should rule similarly here, reject *Charvat* and its flawed progeny, and rule that Section 64.1200(d) does not afford a private right of action.

place"); *see also Holding Co. of the Vills., Inc. v. Little John's Movers & Storage, Inc.,* 2017 WL 6319549, at *7 (M.D. Fla. Dec. 11, 2017) (citing *Iqbal* and not accepting as true an allegation made "upon information and belief" that was merely a legal conclusion).

Plaintiff simply ignores this requirement, and invites this Court to allow his improper claim to proceed based on his omission of any factual allegations (as opposed to his naked conclusions) that CDS' procedures were not properly implemented. The Court should reject that invitation, as it is simply not enough for a plaintiff "simply [to] recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated." *Bailey v. Domino's Pizza*, *LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012). Rather, Plaintiff must make clear "how" the violation occurred. *Id.* Plaintiff did not do so, and his only other remotely "factual" allegation supporting his conclusory DNC claim—*i.e.*, that Plaintiff's "STOP" message "suggest[s] that Defendant does not have a written policy for maintaining an internal do not call list" (*see* Dkt. 1, ¶ 24)—is irrelevant and insufficient to sustain his claim. This is because this allegation does not plead, let alone with any factual support, "that the entity placing the calls failed to institute the proper procedures prior to the initiation of the call." *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). *See also Benzion*, 2014 WL 11531368, at *5 (ruling similarly and dismissing).

Moreover, Plaintiff's own allegations show that he ***failed to properly opt-out***—and, as a consequence, his conclusory allegation that CDS "failed to honor" his request (Dkt. 1, ¶ 49) does not support any inference that CDS failed to institute the requisite

minimum internal procedures prior to his receipt of any subsequent texts. If anything, Plaintiff's allegations support the opposite inference. In this regard, Plaintiff alleges that he responded "STOP" to a text message reminding him of an overdue dental cleaning and putting him on a "waitlist" for an open appointment time. *Id.* ¶¶ 10, 13, 16. Directly in response to this, Plaintiff received confirmation that he would no longer receive "waitlist messages" and invited Plaintiff to respond "STOPALL" in order to cease ***all*** text communications. *Id.* But Plaintiff does not allege that he sent a "STOPALL" message, and therefore he continued to receive reminders regarding his healthcare. *Id.* And Plaintiff does not allege he received any future "waitlist" messages, evidencing that the initial "STOP" request ***was honored***. *Id.* Therefore, Plaintiff's attempt to rely on his "STOP" message to advance his internal DNC claim does not save him from dismissal.[5]

### C. Plaintiff Failed to Plead Facts Demonstrating That He is a "Residential Telephone Subscriber" Within the Meaning of the TCPA.

Plaintiff's DNC claim further fails because he does not sufficiently allege that he qualifies as a "residential telephone subscriber" within the meaning of the TCPA. To the extent that the TCPA's internal DNC regulations in Section 64.1200(d) were promulgated under Section 227(c) of the TCPA, which CDS does not concede here, it is well-accepted that Section 227(c), on its face, only applies to "residential" telephone subscribers. *See*, *e.g.*, *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and rec. adopted,* 2018 WL 5728534 (Aug. 7, 2018).

---

[5] *See also Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (dismissing where allegations indicated plaintiff provided consent and he did not adequately plead revocation); *Cataldi v. Ocwen Loan Servicing, LLC*, 2017 WL 5903440, at *1–2 (E.D. Mich. Nov. 30, 2017) (same).

However, to successfully bring <u>any</u> Section 227(c) claim, it is equally well-established that Plaintiff must allege actual facts (not mere conclusions) supporting an inference that the subject number upon which he received the at-issue text messages is ***actually used*** for "residential" purposes, or face dismissal under Rule 12(b)(6). *See, e.g., Cunningham v. Rapid Response Monitoring Servs., Inc.,* 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017); *Cunningham v. Politi,* 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted,* 2019 WL 2524737 (June 19, 2019); *Hicks v. Alarm.com*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020); *Smith v. Am.-Amicable Life Ins. Co. of Texas*, 2022 WL 1003762, at *3 (E.D. Pa. Apr. 4, 2022). Plaintiff plainly failed to do so in this case.

Here, Plaintiff's Complaint contains ***no facts whatsoever*** that his phone number is actually used for residential purposes. Instead, Plaintiff merely concludes, in ***one*** paragraph, that "[t]he 5929 Number is Plaintiff's personal telephone number and is his residential number." Dkt. 1, ¶ 27. But as one court aptly noted when dismissing on this basis, Plaintiff's bald conclusions that his number is a "residential" line "are not factual allegations, but legal terms drawn from the operative statute" and thus need not be accepted as true under Rule 12(b)(6). *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018). This Court should rule similarly here, and also dismiss the Complaint on this basis in accordance with the weight of applicable authority above.

### D.   Plaintiff Failed to Plead Direct or Vicarious TCPA Liability.

Plaintiff's Complaint should also be dismissed in its entirety under Rule 12(b)(6) because it does not plead specific non-conclusory facts supporting a plausible theory of

TCPA liability—either that CDS (1) itself (and not a third party) "physically" sent the text messages at issue as required to plead direct TCPA liability, or (2) was in a common law agency relationship with (*i.e.*, had sufficient "control" over) a third party who did as required to please vicarious TCPA liability. *See, e.g., Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015); *Hirsch v. Lyndon S. Ins. Co.*, 2019 WL 5110622, at *4-6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.*, 2019 WL 8370863 (Aug. 6, 2019), aff'd, 805 F.App'x 987 (11th Cir. 2020); *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019). "Merely alleging that [a defendant] 'made' or 'initiated' [a] call" or text—like Plaintiff does in his Complaint here—"is not sufficient to allege a TCPA claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394-96 (D. Colo. 2014) (holding that, under Section 227(c) of the TCPA, a defendant must have "physically placed" the call or be vicariously liable under common law agency principles); *Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *3-4 (N.D. Cal. Apr. 24, 2019) (because Plaintiff did not plead facts supporting direct or vicarious liability, he did not sufficiently allege that he received a "telephone solicitation" call that was "initiated" "by or on behalf of the same entity" as is required for Section 227(c) claim). This Court should rule similarly.

At best, Plaintiff alleges in conclusory fashion, *inter alia*, that (1) "the use of Defendant's name in [his] Complaint includes *all agents*, employees, officers, members, directors, *heirs, successors, assigns*, principals, *trustees, sureties, subrogees, representatives,*

*vendors, and insurers* of Defendant"; (2) CDS "*caused* other text messages to be sent to individuals residing within this" District; and (3) the at-issue "text messages originated from telephone numbers … which upon information and belief are owned and operated *by Defendant or on behalf of Defendant.*" Dkt. 1 ¶¶ 9, 21, 29 (all emphases added). *See also id.* ¶ 32 (Plaintiff's proposed class definition, suggesting the texts were sent "from Defendant or anyone on Defendant's behalf"). Courts have widely recognized that such allegations do not suffice, standing alone, to plausibly plead direct or vicarious TCPA liability. *See, e.g., Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (rejecting substantially similar allegations and holding that, "without any facts to explain why plaintiff believes the identified phone number is owned by defendant, this allegation amounts to nothing more than another conclusory allegation that defendant made the calls to plaintiff's cellular phone"); *Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *2-3 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (holding that merely alleging the defendant "placed, or directed to be placed," a call insufficient to state a TCPA claim); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (allegations that "[d]efendant contacted or attempted to contact [plaintiff] from multiple telephone numbers confirmed to belong to Defendant" alone not sufficient to state a TCPA claim); *Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at *1–5 (N.D. Cal. Mar. 28, 2018) (finding plaintiff failed to plausible allege a TCPA liability theory, even though at-issue texts identified defendant and included link to defendant's website). Plaintiff's Complaint should, therefore, be

dismissed on these additional grounds. *See, e.g., Hirsch* and *Abramson*, *supra*.[6]

### E.   Plaintiff Has Not Alleged a "Willful" or "Knowing" Violation.

Apparently attempting to justify seeking treble damages under the TCPA, Plaintiff also suggests, in purely conclusory fashion, that the purported TCPA violation was "knowing and/or willful." *See, e.g.,* Dkt. 1, ¶ 52. That is likewise insufficient under federal pleading standards and cannot survive dismissal under Rule 12(b)(6), as other courts have recognized. *See, e.g., Sterling v. Securus Techs., Inc.*, 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing where allegations that TCPA violations were willful/knowing were mere legal conclusions unsupported by specific factual allegations); *Strange v. GMR Processing LLC*, 2022 WL 898363, at *5 (N.D. Ga. Mar. 28, 2022) (granting default judgment to plaintiff in TCPA case but declining to award "willful" statutory damages because "[a]lthough he alleges that [defendant's] conduct was willful and knowing, this is a legal conclusion unsupported by any specific factual allegations"); *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations, in part, because it "consist[ed] of nothing more than bare-bones legal conclusions").

### II.   Alternatively, Plaintiff's Faulty Proposed Class Definition Should Be Stricken Pursuant To Rule 12(f) And Rule 23.

Alternatively, the Court should strike Plaintiff's faulty class definition (Dkt. 1, ¶ 32) and other class allegations (*e.g.*, ¶¶ 33-42, 50-53, Prayer) under Rules 12(f) and 23.

---

[6] Because Plaintiff's individual TCPA claim does not survive dismissal under Rule 12(b)(6) for the many reasons above, the class allegations must also be dismissed, as well. *See, e.g., Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (citing various cases).

This is because, *inter alia*, Plaintiff's proposed class definition is impermissibly overbroad and individual factual and legal determinations would predominate.

### A.    Plaintiff's Class Definition is Impermissibly Overbroad.

Again, while in some instances discovery may be needed to aid in the determination of whether a class action is appropriate, "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action. *Falcon*, 457 U.S. at 160; *see also MRI Assocs. of St. Pete, Inc.*, 755 F. Supp. 2d at 1207 ("Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on the issue prior to the filing of a motion for class certification.") (*quoting Stan Smith v. Network Sols., Inc. and Verisign, Inc.*, 135 F. Supp. 2d 1159 (N.D. Ala. 2001)).[7] In this regard, a proposed class is improper when it is overbroad and includes individuals who have not suffered any cognizable injury or harm. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276 (11th Cir. 2019) ("[g]iven the 'in terrorem character of a class action,' a class defined so as to improperly include uninjured class members increases the potential liability for the defendant and induces more pressure to settle the case, regardless of the merits.") (internal citations omitted); *see also Conigliaro v. Norwegian Cruise Line*, 2006 WL 7346844, at *3 (S.D. Fla. Sept. 1, 2006) (denying class certification and noting that a class definition is inadequate when it is overbroad and encompasses uninjured persons who would lack standing). The

---

[7] *See also Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) (striking class at the pleadings stage and noting that: "[g]iven the nature of the claims and individual factual inquiries required, it is apparent the individualized issues are predominant and this suit cannot proceed as a class action"); *Lawson v. Life of the South Ins. Co.*, 286 F.R.D. 689, 701 (M.D. Ga. 2012) (striking class allegations at pleadings stage where discovery would not show a class could be certified).

Eleventh Circuit has emphasized that "a class should not be certified if it contains a great many persons who have suffered no injury at the hands of the defendant." *Cordoba*, 942 F.3d at 1276; *see Walewski v. Zenimax Media, Inc.,* 502 F.App'x 857, 861 (11th Cir. 2012) (*per curiam*) (affirming denial of certification where proposed class definition "impermissibly include[d] members who ha[d] no cause of action as a matter of law").[8]

In this case, Plaintiff's proposed class definition is facially overbroad and thus uncertifiable as pled for three separate reasons. **First**, it is overbroad because it would include individuals for whom there could be no TCPA liability against CDS as a matter of law. As discussed above, the internal DNC rules only apply to "residential telephone subscribers." *See* pp. 13-14, *supra*; 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d) (prohibiting telemarketing calls to "residential telephone subscriber[s]"). However, Plaintiff's proposed class definition is <u>not</u> limited to just "residential telephone subscribers" and does <u>not</u> include any sort of "residential" limitation. Moreover, the proposed class definition broadly includes individuals who received "***at least one*** call" after requesting not to be called further. Dkt. 1, ¶ 32. Yet, as also discussed above, Section 227(c) of the TCPA applies only to residential subscribers who received ***more than one*** call in violation of the TCPA's implementing regulations, which courts have held includes the internal DNC rules. *See Charvat v. GVN,* 561 F.3d at 629; *see also Nicholas Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021)

---

[8] *See also Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 676 (S.D. Fla. 2007) ("Plaintiff's class definition sweeps in more parties than are entitled to recovery"); *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477-478 (S.D. Fla. 2006) ("The problems with ascertaining class membership, given Plaintiff's overly broad definition, counsel against a finding that class certification is appropriate").

(dismissing Section 227(c) claim where plaintiff alleged facts suggesting only one violative call). Consequently, there could be no TCPA liability to any putative class members who, like Plaintiff, are not alleged to be "residential" subscribers or that received only one alleged violative call after a purported "stop" request.

**Second**, Plaintiff's proposed class is also not limited to individuals who received a "telephone solicitation" from or on behalf of CDS, and is therefore overbroad as including individuals—like Plaintiff himself—who did not receive a communication that could give rise to TCPA liability. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As discussed above, receipt of a telephone solicitation is an essential prerequisite to Plaintiff's TCPA claim. *See Murphy,* 2013 WL 6865772, at *10. However, the putative class definition is limited to individuals who "were sent ***a text message*** from Defendant or anyone on Defendant's behalf" regarding any subject (*e.g.*, informational messages); as such, it is overbroad on its face as including individuals who were never sent a ***telephone solicitation***, and would therefore lack a viable TCPA claim.

**Third**, the plain language of Plaintiff's proposed "Internal DNC Class" is particularly overbroad in that it does not limit the purported class to individuals who received a telephone solicitation from CDS ***while*** CDS did not have proper procedures in place to make such a phone call. As argued above, "[a] plain reading of § 64.1200(d) reveals that any cause of action under it ***must include allegations*** that the consumer received a phone call from the telemarketer when the telemarketer did not have proper procedures in place to make such a phone call." *Benzion,* 2014 WL 11531368, at *5

20

(emphasis added). Applied here, Plaintiff's putative class definition is not limited in accordance with any actual cause of action provided by § 64.1200(d), as it turns solely on whether an individual received a text message by or on behalf of CDS following a "STOP" request, and not whether CDS had the proper procedures in place prior to the initiation of any call. The class is therefore overbroad on these grounds, as including individuals who were called while CDS had proper procedures in place, and could therefore not advance a claim under § 64.1200(d). *Benzion*, 2014 WL 11531368, at *5

Because the proposed class is impermissibly overbroad, it should be stricken for this reason alone. *See, e.g., Earnest v. Gen. Motors Corp.*, 923 F. Supp. 1469, 1473-74 (N.D. Ala. 1996) (striking class allegations at the pleadings stage where "the proposed class is so broad, amorphous, and vague that it fails to meet the minimum standard of definiteness"); *Colley v. Procter & Gamble Co.*, 2016 WL 5791658, at *8 (S.D. Ohio Oct. 4, 2016) (striking class definitions as overbroad "because they would include millions of consumers who suffered no injury and thus have no standing to bring claims or recover on them."); *A Custom Heating & Air Conditioning, Inc.*, 2018 WL 488257, at *4 (striking proposed TCPA class definition as overbroad where members had no claim); *see also Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("[a] court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult."); *Licari Family Chiropractic Inc. v. eClinical Works, LLC*, 2019 WL 7423551, at *3–5 (M.D. Fla. Sept. 16, 2019) (denying class certification where class did not exclude individuals who solicited the at-issue fax).

### B.      Common Questions of Law and Fact Do Not Predominate.

Plaintiff's proposed class definition would also require individualized determinations on the critical case-dispositive issues of consent and revocation of consent, among others, which demonstrates that common questions of law and fact would <u>not</u> predominate as required by Rule 23(b)(3). To meet this requirement, common questions must "present a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication." *Bacon v. Stiefel Lab'ys, Inc.*, 275 F.R.D. 681, 695 (S.D. Fla. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). Conversely, "predominance is lacking" under that Rule where, as here, "whether the calls were consented to—a threshold issue—is not subject to generalized proof." *Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *2 (S.D. Fla. Oct. 12, 2016).

Thus, courts routinely deny class certification in TCPA cases on predominance grounds where individualized determinations of "consent" (or revocation of consent) would be needed. *See, e.g., New Concept Dental v. Dental Res. Sys., Inc.*, 2020 WL 3303064, at *9–10 (S.D. Fla. Mar. 3, 2020); *Newhart*, 2016 WL 7118998, at *2; *Balthazor v. Cent. Credit Servs., Inc.,* 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012); *Tillman v. Ally Fin. Inc.*, 2017 WL 7194275, at *7 (M.D. Fla. Sept. 29, 2017).[9] Courts also often strike class allegations at the pleadings stage and/or grant pre-discovery motions to deny certification, in TCPA cases like this one and in others, where (as here) individualized

---

[9] *See also Visser v. Caribbean Cruise Line, Inc.*, 2020 WL 415845, at *5 (W.D. Mich. Jan. 27, 2020); *Revitch v. Citibank*, 2019 WL 1903247, at *4 (N.D. Cal. Apr. 28, 2019); *Saulsberry v. Meridian Financial Servs., Inc.*, 2016 WL 3456939, at *11 (C.D. Cal. Apr. 14, 2016); *Trenz v. On-Line Admins., Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying class).

determinations of "consent" are needed. *See, e.g., Pepka and Lindsay, supra*; *Eldridge v. Cabela's Inc.,* 2017 WL 4364205, at *7-11 (W.D. Ky. Sept. 29, 2017); *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017); *Dorfman v. Albertson's LLC*, 2020 WL 86192, at *5 (D. Idaho Jan. 7, 2020); *see also Baisden v. Credit Adjusts., Inc.*, 813 F.3d 338, 343 (6th Cir. 2016) ("[t]he context of the consent provided is ***critical***" in a TCPA case) (emphasis added). This Court should rule similarly in the present case.

Here, it is apparent from the face of the Complaint that common questions of law and fact do not predominate and that individualized inquiries would be required. In this regard, Plaintiff seeks to represent a nationwide putative class of persons "who, within the four years prior to the filing of this Complaint, were sent a text message from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number ***after*** making a request to Defendant to not receive future text messages"—*i.e.*, after they revoked "consent." Dkt. 1, ¶ 32 (emphasis in original). However, whether CDS or someone on its behalf continued to place telemarketing calls after a request to "stop calling" cannot be determined on a class wide basis, as individualized issues will inevitably predominate. *See, e.g., Eldridge*, 2017 WL 4364205, at *9 (stating that the caselaw "favors striking" revocation classes in TCPA cases) (collecting cases)). Indeed, though someone who consented can later "request" that the caller "stop calling"—*i.e.*, ***revoke*** consent—under the TCPA, they "***cannot use ambiguous statements***" and "must ***clearly*** revoke consent." *Barnett v. Bank of Am., N.A.*, 2021 WL 2187950, at *5 (W.D.N.C. May 28, 2021) (citing various cases, emphasis added). Thus, the critical

legal and factual issues of consent and revocation are inextricably intertwined with Plaintiff's proposed class definition as pled, and individualized determinations on those issues would be needed at the minimum. *See also Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) ("[T]he predominant issue of fact [in a TCPA case] is undoubtedly one of ***individual*** consent") (emphasis in original)); *Lindsay*, 2013 WL 275568, at *5 (granting motion to strike, holding "the absence of prior consent and the absence of a prior business relationship" are individualized issues precluding certification in a TCPA case under Rule 23). In other words, due to the individualized nature of revocation of consent, no matter the method of revocation, "[t]he class members would not be able to present 'the same evidence [that] will suffice for each member to make a prima facie showing' that the recipients of [the alleged texts] calls had validly revoked his or her prior consent." *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 293-294 (N.D. Ill. 2014) (*quoting Messner v. Northshore Univ. Health System*, 669 F.3d 802, 815 (7th Cir. 2012)). Instead, "[i]n order to determine whether each potential class member did in fact revoke his or her prior consent at the pertinent time, the Court would have to conduct class-member-specific inquiries for each individual." *Id*. at 293. Therefore, Plaintiff's proposed class definition should also be stricken  here, because individualized consent and other inquiries would predominate.

### C.    Plaintiff's Remaining "Class" Allegations Are Superfluous.

Finally, since Plaintiff's faulty class definition is properly stricken, all remaining "class" related allegations (*see, e.g.,* Dkt. 1, ¶¶ 33-42, 50-53, Prayer) would be superfluous and, therefore, are properly stricken as well. *See, e.g.,* Fed. R. Civ. P. 12(f); *Flores v. City*

*of Cal. City*, 2019 WL 1934016, at *6 (E.D. Cal. May 1, 2019) (striking "any reference to a class, Rule 23, or a class action" after dismissal of class claims).

## III.   **CONCLUSION**

For all the reasons stated above, the Complaint should be dismissed in its entirety under Rule 12(b)(6), or alternatively, the defective class and other class related allegations identified above should be stricken under Rules 12(f) and/or 23.

DATED:  August 29, 2022                        Respectfully submitted,

                                                                    **MARK MIGDAL & HAYDEN**
                                                                    80 S.W. 8th Street, Suite 1999
                                                                    Miami, Florida 33130
                                                                    Telephone: 305-374-0440

                                                                    By: *s/ Yaniv Adar*
                                                                          Yaniv Adar, Esq.*
                                                                          Florida Bar No. 63804
                                                                          Josh A. Migdal, Esq.
                                                                          Florida Bar No. 19136
                                                                          josh@markmigdal.com
*Pursuant to Local Rule 2.02(a),                      yaniv@markmigdal.com
Yaniv Adar is designated as Lead Counsel       eservice@markmigdal.com

                                                                    *Attorneys for Defendant Coast
                                                                    Dental Services, LLC*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for Defendant conferred in good faith with counsel for Plaintiff regarding the substance of the foregoing Motion on August 26, 2022 via email. The parties were unable to reach an agreement and, thus, the Motion is opposed.

                                  */s/ Yaniv Adar*
                                  Yaniv Adar

## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 29, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties, via their counsel of record, by operation of the Court's electronic filing and docketing system.

/s/ Yaniv Adar
Yaniv Adar